**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin Peter KINGS, a/k/a, Comffort, Peter Onyema Penn, Neteson Golden, Defendant–Appellant.**

**No. 91–2968.**

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1993.

---

Alvin E. Nunnery, Houston, TX (court-appointed), for defendant-appellant.

Peggy Morris Ronca, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

PER CURIAM:

From 1987 through 1990, Melvin Peter Kings was engaged in fraudulent schemes to obtain credit. After violently resisting an attempted arrest in Houston, Texas by State Department security agents in July 1990, Kings was arrested in Cobb County, Georgia in November 1990. Charged in a ten-count indictment with assaulting a federal officer and various crimes involving

use of false social security numbers and fraudulently obtained credit cards, Kings pled guilty to one count of false use of a social security number, one count of fraudulent use of a credit card, and one count of assault on a government officer. The district court sentenced Kings to: 120 months of imprisonment on the credit card count; a consecutive term of 30 months on the assault count; a consecutive 60–month term on the pre-Guidelines social security offense; a 36–month term of supervised release on the credit card count; and a concurrent 12–month term of supervised release on the assault count. Additionally, the court imposed a fine of $12,500 and ordered total restitution in the amount of $21,439.65. Kings appeals from his sentence, and, finding no error, we affirm.

## I. DISCUSSION

Kings raises the following issues on appeal:

A. Whether the district court erred in making an "official victim" enhancement to Kings' sentence;

B. Whether the district court erred by (i) considering Kings' pre-Guidelines offense as relevant conduct under the Guidelines, and (ii) then imposing a *consecutive* sentence for that same pre-Guidelines offense:

C. Whether the district court erred in using Kings' social security (pre-Guidelines) offense to increase his criminal history category under the Guidelines;

D. Whether the district court erred in assessing *consecutive* sentences on the credit card and assault (Guidelines) counts; and

E. Whether the district court's application of the Guidelines violates due

process, the Eighth Amendment, the Separation of Powers Clause, and the non-delegation doctrine.

In considering these challenges to Kings' sentence, "[b]eyond even the clearly erroneous standard, this court must give due deference to the sentencing court's application of the [G]uidelines to the facts." *United States v. Harris*, 932 F.2d 1529, 1536 (5th Cir.1991) (internal quotation omitted), *cert. denied,* — U.S. —, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991); *United States v. Parks*, 924 F.2d 68, 71 (5th Cir.1991) (citations omitted); *see also* 18 U.S.C.A. § 3742(e) (West Supp.1993).[1] Moreover, we recognize that Kings' sentence "must be upheld unless [he] demonstrates that it was imposed in violation of the law, was imposed because of an incorrect application of the Guidelines, or is outside the range of applicable Guidelines and is unreasonable." *Parks*, 924 F.2d at 71, *citing United States v. Goodman*, 914 F.2d 696, 697 (5th Cir. 1990) (other citations omitted), *recognizing supersession, United States v. Fitzhugh*, 954 F.2d 253, 254–55 (5th Cir.1992); *see also* 18 U.S.C. § 3742(f) (establishing standard of review for sentencing); *Harris*, 932 F.2d at 1536 (sentences not imposed in violation of the law, not resulting from an incorrect application of the Guidelines, and not outside the applicable Guidelines range must be upheld).

### A. *"Official Victim" Enhancement*

■ Pursuant to Guidelines section 3A1.2 (enhancement where the victim is an officer),[2] the district court increased Kings' base offense level by three for assaulting a federal officer carrying out her official duties. Kings contends that this increase

---

**1.** Section 3742(e) provides that "[t]he court of appeals ... shall give due deference to the district court's application of the guidelines to the facts." *Id.*

**2.** Section 3A1.2 provides that, if:

(a) the victim was a law enforcement or corrections officer; a former law enforcement or corrections officer; an officer or employee included in 18 U.S.C. § 1114; a former officer or employee included in 18 U.S.C. § 1114; or a member of the immediate family of any of the above, and the offense

of conviction was motivated by such status; or

(b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury,

increase by 3 levels.

U.S.S.G. § 3A1.2.

constitutes an impermissible double counting in violation of the Due Process clause of the Fifth Amendment to the United States Constitution because Kings was convicted of assaulting a federal officer in violation of 18 U.S.C. § 111 (the relevant Guidelines sections for this offense are 2A2.2 and 2A2.4), and an element of that offense is the federal officer status of the victim.[3]

We have recently addressed this issue. *See United States v. Kleinebreil,* 966 F.2d 945, 955 (5th Cir.1992). In *Kleinebreil,* we recognized that, although Guidelines section 2A2.4 ("Obstructing or Impeding *Officers*") incorporates the official status of the victim, section 2A2.4 also contains a cross-reference to section 2A2.2 (simply "Aggravated Assault") for situations in which the defendant is convicted under 18 U.S.C. § 111. Specifically, section 2A2.4 provides that, "[i]f the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4(c)(1). Moreover, the Application Notes accompanying section 2A2.4 state that the official victim assessment under Guidelines section 3A1.2 should *only* be applied when this cross-reference in section 2A2.4 ("Obstructing or Impeding Officers") requires that the offense level be determined under section 2A2.2 ("Aggravated Assault"). *See* U.S.S.G. § 2A2.4, comment. (n.1). Therefore, we held that:

> Kleinebreil was convicted under 18 U.S.C. § 111, and his conduct constituted aggravated assault. Accordingly, pursuant to the cross-reference in § 2A2.4, § 2A2.2 ("Aggravated Assault") applies. Unlike the base offense level for § 2A2.4, the base offense level for 2A2.2 does *not* reflect the fact that the victim was a government official. *See* U.S.S.G.

> 3A1.2, comment. (n. 3) (the *only* offense guideline in Chapter Two, Part A, that specifically incorporates the official status of the victim is § 2A2.4 ("Obstructing or Impeding Officers")). Therefore, the district court properly increased the assault group offense level for an official victim.

*Kleinebreil,* 966 F.2d at 955 (emphasis in original); *see also United States v. Padilla,* 961 F.2d 322, 327 (2d Cir.) (also noting that Guidelines section 3A1.2(b), unlike 18 U.S.C. § 111, requires that the defendant *know* that he is assaulting an official victim), *cert. denied,* —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992); *United States v. Sanchez,* 914 F.2d 1355, 1362 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1990). Similarly, we now conclude that the district court properly increased Kings' group offense level for assaulting a government official.

## B. *Double–Counting Contention*

■ Kings also raises a double-counting contention regarding the district court's consideration of his pre-Guidelines social security offense[4] as relevant conduct under Guidelines section 1B1.3. Specifically, Kings asserts that the district court (i) considered this offense as "relevant conduct" for purposes of sentencing him for his credit card offense, and (ii) then ordered him to serve a *consecutive* sentence for the same pre-Guidelines offense, and that this constitutes an impermissible double counting for a single offense. According to Kings, the district court only had two legitimate options for utilizing his pre-Guidelines offense—(i) the district court could have used his social security offense to increase his criminal history category under the Guidelines for his credit card Guidelines offense, and then ordered that Kings

---

**3.** Section 111 provides in pertinent part that whoever:

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the

performance of official duties during such person's term of service,

shall be fined under this title or imprisoned not more than three years, or both. 18 U.S.C. § 111.

**4.** According to Kings' presentence report, this offense involved Kings use of another person's name and social security number to obtain a credit card.

serve a *concurrent* sentence for this pre-Guidelines offense; or (ii) the court could have considered the pre-Guidelines and Guidelines offenses to be unrelated and ordered *consecutive* sentences for them. We disagree.

We addressed this very issue in *United States v. Parks*, 924 F.2d 68, 71–74 (5th Cir.1991). In that case, the district court considered pre-Guidelines conduct in calculating a sentence for Guidelines convictions, and then ordered *consecutive* sentences for the pre-Guidelines and Guidelines convictions. In considering challenges which closely echo those now articulated by Kings, we held that:

> Although district courts often do order concurrent sentences for defendants in Parks' situation, we conclude that the Guidelines do not require that result and that the district court here did not err in applying the Guidelines to Parks. We recognize that due deference is afforded to the district court's application of the Sentencing Guidelines. We hold that it is within the district court's discretion to

order consecutive sentences for pre-Guideline and Guideline convictions even if it uses pre-Guideline conduct in arriving at the Guideline offense level.

*Parks*, 924 F.2d at 71; *see also United States v. Gaudet*, 966 F.2d 959, 963 (5th Cir.1992) (relying upon *Parks*, and holding that district court's have discretion to impose consecutive sentences for Pre–Guidelines and Guidelines offenses even if pre-Guidelines conduct is used to arrive at a Guidelines offense level); *United States v. Ewings*, 936 F.2d 903, 910 (7th Cir.1991);[5] *United States v. Watford*, 894 F.2d 665, 667–68 (4th Cir.1990) (written by the Chairman of the United States Sentencing Commission, Judge Wilkins). The principles guiding our *Parks* decision—principles that also guide us in the case at issue—are that (i) pre-Guidelines conduct may be considered in arriving at a Guidelines offense level,[6] (ii) district court's generally have broad discretion—especially for pre-Guidelines offenses—in deciding whether sentences should run concurrently or consecutively, so long as the overall sentence remains within statutory limits,[7] and (iii) sen-

---

**5.** In *Ewings,* the Seventh Circuit held that:

> [E]ven though the guidelines generally eschew consecutive sentences except where necessary to implement the applicable guideline range, "nothing in the guidelines or the Sentencing Reform Act precludes the court from ordering that a sentence imposed on a preguidelines count be served consecutively to a sentence imposed on a guidelines count." *United States v. Watford,* 894 F.2d 665, 669 (4th Cir. 1990). Making the sentence on the pre-guidelines counts concurrent with the sentence on the guidelines count would have been more consistent with the approach of the guidelines, but neither [18 U.S.C.] § 3553 nor the guidelines obligated the court to apply the guidelines to nonguidelines counts. We therefore conclude, along with every other circuit to address this question, that the district court had the discretion to make the defendant's guidelines and pre-guidelines counts consecutive.

936 F.2d at 902 (internal citation omitted).

**6.** Guidelines section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group[,]" and section 1B1.3(a)(2) provides that, under section 3D1.2(d), "all such acts and omissions that were part of the same course or conduct or common scheme or plan as the offense of conviction" should be considered relevant conduct

for determining the appropriate Guidelines range. Applying these sections, the Fourth Circuit has held that:

> Since Relevant Conduct is a real offense concept, it encompasses criminal activity *in the entirety of a common scheme* regardless of whether the conduct occurred before or after November 1, 1987, the effective date of the Guidelines. However, only counts of conviction that occur, in whole or in part, after that date are subject to a guidelines sentence.

*Watford,* 894 F.2d at 668 n. 2 (emphasis added).

**7.** *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (judges have almost complete discretion in fashioning a pre-Guidelines sentence); *United States v. Helms,* 897 F.2d 1293, 1299 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990) (upholding consecutive sentences on pre-Guidelines counts and emphasizing that "[t]he district court has broad discretion in sentencing determinations"); *Watford,* 894 F.2d at 667 ("[P]rior to the effective date of the guidelines, judges, subject to few limitations not applicable here, were given unbridled discretion in fashioning a sentence."); *see also* 18 U.S.C. § 3584 (district courts generally have discretion to determine whether Guidelines sentences should run concurrently or consecutively).

A number of circuits addressing this issue have found that district courts' broad discretion to sentence for pre-Guidelines offenses is con-

tences for pre-Guidelines offenses may run consecutively to sentences for offenses which fall under the Guidelines.[8] *See Parks*, 924 F.2d at 72 (discussing the jurisprudence establishing each of these principles). Although we recognized in *Parks* that an advisory by the United States Sentencing Commission [9] "suggests that defendants in Parks' [and Kings'] situation should usually receive concurrent sentences[,]" 924 F.2d at 73, we also recognized that "[t]he advisory sets out no absolute rule[,]" and that "[t]he district court's decision to impose consecutive sentences is entitled to due deference." *Id.* at 73–74. [10]

In short, the district court "had the broadest of discretion in determining whether the sentences were to be concurrent or consecutive[,] and it had the right to invoke the thoroughly established principle that related criminal conduct can be taken into account in sentencing." *Id.* at 74. Therefore, we conclude that the district court's (i) consideration of Kings' pre-Guidelines social security offense in determining an offense level for his credit card offense under the Guidelines and (ii) imposition of a consecutive sentence for that pre-Guidelines offense does not constitute an impermissible double counting.[11]

trolling. For example, in *United States v. Litchfield*, the Eleventh Circuit recently held that: We join the other circuits that have faced this issue and hold that sentencing courts may impose consecutive sentences if a defendant is convicted of both a pre-sentencing guidelines offense and a post-sentencing guidelines offense, even if the guidelines, had they applied to both offenses, would have required concurrent sentences. The district court has "unfettered discretion to impose sentences on pre-guidelines counts consecutively or concurrently. And nothing in the guidelines or the Sentencing Reform Act precludes the court from ordering that a sentence imposed on a pre-guidelines count be served consecutively to a sentence imposed on a guidelines count." 959 F.2d 1514, 1524 (10th Cir.1992) (internal citations omitted), *quoting Watford*, 894 F.2d at 669. Similarly, the Third Circuit recently held that a defendant's "assertion that his one Guideline count of tax evasion has some limiting effect on the district court's discretion to impose consecutive sentences for his pre-Guideline counts fails." *United States v. Pollen*, 978 F.2d 78, 92 (3d Cir.1992); *see also Ewings*, 936 F.2d at 910 ("Given the wide scope of the court's discretion to sentence the defendant on the pre-guidelines counts, it is immaterial whether the court made the defendant's sentences on those counts consecutive to his sentence on the two guidelines counts.").

**8.** *See United States v. Garcia*, 903 F.2d 1022, 1025 (5th Cir.) ("We agree with Judge Wilkins' opinion in *Watford*[, 894 F.2d at 667,] that sentencing courts have the discretionary power to impose consecutive sentences contrary to the mandate of the Sentencing Guidelines where a defendant is convicted for both Guidelines and pre-Guidelines offenses."), *cert. denied,* —— U.S. ——, 111 S.Ct. 364, 112 L.Ed.2d 327 (1990); *see also supra* note 7.

**9.** This advisory provides that: Relevant conduct for offenses subject to the guidelines is to be determined without regard

to the November 1 implementation date. If the relevant conduct for an offense committed on or after November 1, 1987, overlaps with conduct sanctioned as part of a pre-November 1 count, there would be a potential for double counting unless the pre-guideline counts were sentenced concurrently. *The court will have to carefully fashion the sentence with these concerns in mind.* United States Sentencing Commission, *Questions Most Frequently Asked About the Sentencing Guidelines* 3–4 (5th ed. March 1992) (emphasis added) (provided in response to question 13: "If an indictment includes separate counts under pre-guideline law and post-guideline law, how should the defendant be sentenced?").

**10.** Beyond its actual language, our interpretation of the advisory is supported by the disclaimer on the cover of the Sentencing Commission publication containing it. This disclaimer provides that:

Information provided by the Commission's Training Staff is offered to assist in understanding and applying the sentencing guidelines. The information does not necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court, or the parties in any case.

Sentencing Commission, *Questions Most Frequently Asked, supra* at note 9.

**11.** Because we find that *Parks* decisively controls this issue, and it is an issue tangled to other contentions raised by Kings and addressed later in this opinion, we have considered the merits of Kings' double-counting contention. Nevertheless, we note that the district court's consideration of Kings' social security offense as conduct relevant to his credit card offense did not have any ultimate bearing on Kings' adjusted offense level under the Guidelines. Specifically, the Guidelines section which guides courts in calculating the combined offense level in a multiple-count case requires district courts to *"[d]isregard* any [offense] that

## C. *Kings' Criminal History Category*

■ Kings has added a third tier to his multiple-counting contention. Specifically, Kings asserts that the district court's use of his pre-Guidelines social security offense to increase his criminal history category under the Guidelines—piled on top of its (i) consideration of the same social security offense as "relevant conduct" for purposes of calculating an appropriate offense level for his credit card offense, and (ii) imposition of a *consecutive* sentence for this offense—constitutes a triple sanction for a single offense. We disagree.

We have already determined that the district court's (i) consideration of Kings' pre-Guidelines social security offense as relevant conduct under the Guidelines and (ii) imposition of a consecutive sentence for that offense does not constitute an impermissible double counting. *See supra* Part I.B. However, we still must determine whether the district court's (i) consideration of Kings' social security offense as relevant conduct under the Guidelines and (ii) use of that conduct to enhance Kings' criminal history category constitutes an impermissible double counting.

The Second Circuit has recently addressed this very issue, holding that:

> [I]t may be appropriate to count a single factor both in assessing the defendant's criminal history category and in calculating the applicable offense level since the two measure *different* things. The of-

fense level represents a judgment as to the wrongfulness of the particular act. *See* 28 U.S.C. § 994(c). The criminal history category principally estimates the likelihood of recidivism. *See* U.S.S.G. Chapter 4, *Introductory Commentary* ("The specific factors included in § 4A1.1 and § 4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of criminal behavior.").

*United States v. Campbell*, 967 F.2d 20, 24 (2d Cir.1992).[12] Accordingly, so long as Kings' social security offense "is relevant to determining both [Kings'] criminal history category and the offense level for the charged conduct[,]" the district court did not err. *Campbell*, 967 F.2d at 25. "While this may be double counting in a literal sense, double counting is legitimate where a single act is relevant to two dimensions of the Guideline analysis." *Id.*

We find that the "double counting" Kings alleges was legitimate in the case before us. First, we find that Kings' social security fraud conviction was relevant for determining the offense level for his credit card fraud conviction. In short, the 1987 social security offense for which Kings has been convicted constitutes one fraudulent act on a continuum of similar efforts by Kings to disguise his identity and obtain credit. Given the explicit language of Guidelines sections 1B1.3(a)(2) and 3D1.2 (*see supra* note 6), we find that the district court did not err in determining that Kings'

---

is *9* or more levels less serious than the [offense] with the highest offense level." U.S.S.G. § 3D1.4 (emphasis added). The base offense level for Kings' assault count—an offense totally unrelated to and unaffected by Kings' social security offense—is 26, while the base offense level for his credit card count is either 12 or 15, depending upon whether the adjustment for relevant conduct which Kings has challenged is included. Because the assault and credit card offenses are separated by a minimum of *11* (the difference between 26 and 15) levels, Kings' combined offense level under the Guidelines is *wholly* determined by his assault count. Accordingly, at least for the limited purpose of determining Kings' offense level under the Guidelines, any error resulting from consideration of Kings' social security offense as conduct relevant to his credit card offense would be harmless. *See Williams v. United States,* ——

U.S. ——, ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (remand for resentencing is required "only if the sentence was 'imposed as a result of an incorrect application of the Guidelines' ").

**12.** The Eleventh Circuit has also dealt with this issue, holding that:

> Double counting a factor during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because "each section concerns conceptually separate notions relating to sentencing." ... The criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States.

*United States v. Strachan*, 968 F.2d 1161, 1161 (11th Cir.1992) (internal citations omitted).

conviction for using another person's social security number "for the purpose of obtaining credit, money, goods, and services" in 1987 is relevant for measuring the wrongfulness of that *same* behavior from May 1989 through May of 1990.

Second, Kings' social security fraud conviction was relevant for determining his criminal history category. Under Guidelines section 4A1.1(e), if an offense is committed while the defendant is on parole and less than two years after release from prison, three points should be added to the defendant's criminal history category. Kings was released on parole from the Texas Department of Corrections on April 22, 1986, and his parole terminated on October 22, 1988. He committed his social security offense on August 3, 1987—a period during which he was on parole and less than two years after his release from prison. Because the commentary accompanying Guidelines sections 4A1.1(d) and 4A1.1(e) specifies that enhancement is appropriate "if the defendant committed *any part* of the instant offense (i.e., *any* relevant conduct)" [13] while on parole or within two years of release from prison, and the district court determined that Kings' credit card fraud offense was actually a continuation of his social security fraud offense, the court found that a three-point enhancement to Kings' criminal history category was appropriate.[14] *See United States v. Harris*, 932 F.2d 1529, 1538–39 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991) (under Guidelines sections 4A1.1(d), (e), relevant but unadjudicated pre-Guidelines conduct may be used to increase a defendant's criminal history score with respect to an adjudicated Guidelines offense).

In sum, we find that the district court did not err in making its two *separate* upward departures based upon Kings' social security offense. Moreover, because the social security offense is a pre-Guidelines offense, we have found that the district court did not err by imposing a consecutive sentence for it. *See supra* Part I.B. Accordingly, we reject Kings' multiple-counting contention.

### D.  *Consecutive Guidelines Sentences*

■ Because Kings was convicted of multiple Guidelines counts under a single indictment, the district court was required to determine the appropriate Guidelines sentencing range for Kings' convictions. This is referred to as "total punishment." *See* U.S.S.G. § 5G1.2, comment. A defendant's total punishment range under the Guidelines is determined from the Guidelines' Sentencing Table by correlating the appropriate criminal history category (discussed *supra* at Part I.C) with the defendant's combined offense level (discussed *supra* at note 11). Because Kings' criminal history category is VI and his combined offense level is 26, the recommended total punishment range for both of his Guidelines offenses is 120–150 months.

However, before relying upon total punishment under the Guidelines, sentencing courts must determine the defendant's maximum statutory sentence. When the maximum statutory sentence is less than the total punishment minimum under the Guidelines, the statutory maximum sentence becomes the Guidelines sentence. *See* U.S.S.G. § 5G1.1(a). In the case before us, the maximum statutory sentence for Kings' Guidelines offenses is 156 months,[15] which means that the 120–150 total punishment range under the Guidelines is not excessive.

---

**13.** Emphasis has been added.

**14.** This enhancement raised Kings' criminal history score from 10 to 13, resulting in his being sentenced under Category VI rather than under Category V and, therefore, at a higher sentencing range. Specifically, Kings' combined offense level for his two Guidelines offenses is 26, and Category V permits a sentence of 110–137 months for such an offense level while Category VI permits a ·sentence of 120–150 months.

**15.**· The maximum sentence for fraudulent use of credit cards is 120 months. *See* 15 U.S.C. § 1644 (the statutory punishment for credit card fraud is a fine of not more than $10,000, or imprisonment for not more than 120 months, or both). The maximum sentence for assaulting a federal officer while resisting arrest is 36 months. *See* 18 U.S.C. § 111 (providing that punishment for assaulting an officer is a fine, or imprisonment for not more than three years, or both).

798

Moreover, to determine whether sentences for Guidelines offenses should run concurrently or consecutively, district courts must determine the statutory maximum sentence for the defendant's most serious offense. Specifically, section 5G1.2 provides that:

(c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce the combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

The statutory maximum sentence for Kings' most serious offense—credit card fraud—is 120 months, which happens to be the *minimum* recommended total punishment for his Guidelines offenses. *See* 15 U.S.C. § 1644 (discussed supra at note 15). To raise Kings' sentence to the Guidelines maximum total punishment of 150 months, the district court sentenced Kings to consecutive terms of (i) 120 months for his credit card fraud conviction and (ii) 30 months for his conviction for assaulting a government officer. According to Kings, this 30–month consecutive sentence is impermissible because the 120–month sentence for credit card conviction brought his sentence into the Guidelines recommended total punishment range of 120–150 months, and section 5G1.2(c) explicitly provides that, "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the *total punishment,* then the sentences on all counts shall run concurrently, except to the extent otherwise required by law."

It is indisputable that the district court did not impose a sentence for Kings' Guidelines offenses which exceeds either his total punishment range of 120–150 months or the statutory maximum sentence for these offenses, which is 156 months. *See supra* note 15. All that is at issue is whether, under section 5G1.2(c), the district court was bound to sentence Kings to the Guidelines minimum total punishment because the statutory maximum sentence for his credit card conviction reaches the Guidelines' total punishment threshold. We find that it was not.

The district court expressly stated its reasons for imposing consecutive sentences for Kings' Guidelines offenses:

I've chosen a term at the highest end of the guideline range because I do not believe that the calculated offense level adequately sanctions the seriousness of the Defendant's real conduct due to the grouping rules in determining the combined offense level for multiple counts of conviction.

The counts involving fraud were not sanctioned by way of an increase in the established offense level; and the commentary to the Sentencing Guideline Section 3D1.4 states,

If there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts. Ordinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense.

I have chosen consecutive terms for the same reason and also because I believe this case is one in which both more than minimal planning and a scheme to defraud more than one victim are present.

This case presents something of an anomaly because, as recognized by the district court, the offense which controls the final phase of Kings' sentencing under section 5G1.2(c) did not even factor into his offense level. Specifically, although Kings' credit card count carries a statutory maximum sentence that is 84 months higher than the statutory maximum sentence for his assault count, the offense level for Kings' assault count is more than nine lev-

els higher than the offense level for his credit card count. Accordingly, in determining Kings' combined offense level, his credit card offense was disregarded. *See supra* note 11. Ironically, strictly applying Guidelines section 5G1.2(c), Kings' credit card count would control the final phase of his sentencing, and his assault count—which appears to constitute the more serious offense under the Guidelines since it carries a much higher offense level—would have no effect, thereby leaving Kings' merely at the *threshold* of his total punishment sentencing range.

Beyond the commentary quoted by the district court, Guidelines section 3D1.4(c) provides that, although offenses such as Kings' credit card offense may be disregarded in determining a combined offense level, they "may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level." We conclude that Kings' credit card offense did provide such a reason, and, therefore, we affirm the district court's imposition of consecutive sentences to—while not exceeding the maximum statutory sentence of 156 months—reach the high end of Kings' total punishment sentencing range under the Guidelines.

### E. *Constitutional Challenges*

 Kings' final contention, which is packaged within a conglomeration of constitutional claims, is essentially that the Guidelines are unconstitutional because they have prescribed a sentence which exceeds the three-year[16] maximum statutory sentence for his assault conviction. Specifically, according to Kings, the "true count of sentence" was his assault count because his two Guidelines counts were grouped pursuant to Guidelines section 3D1.1, and the assault count—with its offense level of 26—determined his combined offense level pursuant to Guidelines section 3D1.4(c). *See supra* note 11. Kings asserts that, because his assault count wholly determined his offense level, any punishment imposed beyond the assault count's statuto-

ry maximum punishment of thirty-six months constitutes punishment "far exceed[ing] the maximum penalty authorized by law."

As correctly stated by the government, Kings ignores the fact that, although his assault conviction may have determined his criminal offense level, he was convicted of *multiple* crimes. In addressing Kings' other contentions, we have determined that the district court did not err in calculating his cumulative sentence under the Guidelines. Because Kings' total Guidelines sentence of 150 months does not exceed his combined statutory maximum sentence of 156 months, we conclude that Kings' has failed to establish a claim of constitutional magnitude. *See Mistretta v. United States,* 488 U.S. 361, 371–84, 109 S.Ct. 647, 654–61, 102 L.Ed.2d 714 (1989).

## II. CONCLUSION

For the foregoing reasons, we AFFIRM Kings' sentence.

---

**16.** Kings mistakenly asserts that the maximum statutory sentence for his assault conviction is *five* years. *See* 18 U.S.C. § 111.