**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Steven Bruce SMITH, Defendant–Appellant.**

**No. 98–5957.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1999.

Decided Nov. 10, 1999.

---

**11.**  This decision makes it unnecessary for us to decide whether AEDPA § 440(d) violates the Equal Protection Clause.

Tony R. Arvin (argued and briefed), Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

April R. Ferguson (argued), Bruce I. Griffey (briefed), Asst. Fed. Public Defender, Memphis, TN, for Defendant–Appellant.

Before: BATCHELDER and COLE, Circuit Judges; MARBLEY,* District Judge.

## OPINION

BATCHELDER, Circuit Judge.

Defendant Steven Smith ("Smith") pled guilty to five federal weapons violations and assaulting a federal officer in violation of 18 U.S.C. § 111. He now appeals the district court's application of the sentencing guidelines to compute his sentence. For the reasons that follow, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for resentencing.

### I.  Factual and Procedural History

Smith was indicted on May 20, 1997, on seven counts stemming from the intentional shooting of a policeman searching his hotel room. In exchange for a dismissal of the first charge, attempting to kill a federal officer in violation of 18 U.S.C. § 1114, Smith pled guilty to the remaining counts: (1) assaulting a federal officer in violation of 18 U.S.C. § 111; (2) carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); (4) being a fugitive in possession of a firearm in violation of 18 U.S.C. § 922(g)(2); (5) receiving a firearm while being under indictment in violation of 18 U.S.C. § 922(n); and (6) possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

To arrive at Smith's sentence of 248 months imprisonment, the court grouped together all but the § 924(c) offense as closely related counts, pursuant to U.S. Sentencing Guidelines ("USSG") § 3D1.2(c). The base offense level for the grouped counts was 20. The court increased the base offense level of 20 by applying two specific offense characteristics listed in § 2K2.1(b):[1]

(4) If any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels.

.    .    .    .    .

(5) If the defendant used or possessed any firearm or ammunition in connection with another felony offense; . . . increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

§ 2K2.1(b)(4)-(5). The court also increased Smith's base level by 3 because he knew the victim of his assault was a law enforcement officer (§ 3A1.2(b)), and decreased the base level by 3 because Smith accepted responsibility (§ 3E1.1), to arrive

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The court declined to apply the cross reference noted in USSG § 2K2.1(c)(1)(A)to the grouped counts because the cross-referenced section, aggravated assault, would not yield a higher offense level. § 2K2.1(c) provides:

   If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, . . . apply—(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; . . . .

   § 2K2.1(c). The Attempt guideline, § 2X1.1, refers us to the guideline for the substantive offense, aggravated assault— § 2A2.2, which yields a lower offense level than that calculated under § 2K2.1.

at a total offense level of 26. USSG § 3D1.3(a) instructs that the controlling guideline for the grouped counts is the guideline which results in the highest offense level. The district court therefore concluded that § 2K2.1, the guideline for unlawful possession of firearms, was the controlling guideline because it yielded an offense level of 26, rather than the guideline for aggravated assault, § 2A2.2, which yielded an offense level of 24.

The applicable guideline for the § 924(c) offense was § 2K2.4(a), which provides that:

> If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. § 844(h), § 924(c), or § 929(a), the term of imprisonment is that required by statute.

USSG § 2K2.4(a). The statutory term of imprisonment for a § 924(c) violation is five years in addition to any prison term imposed for an underlying offense.

Departing upward from the offense level of 26 on the bases of (1) Smith's discharge of a firearm (§ 5K2.6), (2) his criminal purpose (§ 5K2.9), and (3) his infliction of serious bodily injury[2] (§ 5K2.2), the court arrived at a final level of 31 and a guideline range of 151 to 188 months for the grouped offenses. The court sentenced Smith to a total of 188 months for the grouped offenses, and added § 924(c)'s mandatory five-year consecutive sentence to arrive at a total sentence of 248 months' incarceration, to be followed by three years' supervised release.

## II. Analysis

■ Smith contends that his sentence constitutes impermissible "double counting" in three respects. Because Smith's arguments all rest on the legal interpretation of various guidelines, we review the issues de novo. *See United States v. Vincent,* 20 F.3d 229, 241 (6th Cir.1994).

### A. Specific Offense Characteristics of USSG § 2K2.1

First, Smith contends that the district court erred in applying the specific offense characteristics of § 2K2.1(b)(4)-(5) for possessing a weapon with an obliterated serial number and using the weapon in connection with another felony offense. He argues that the commentary to § 2K2.4, · which applied to his § 924(c) conviction, prohibits the use of these specific offense characteristics. The relevant provisions of that commentary provide:

> Where a sentence under this section is imposed with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (*e.g.,* § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.
>
> .        .        .        .        .
>
> *Background:* 18 U.S.C. §§ 844(h), 924(c), and 924(a) provide mandatory minimum penalties for the conduct proscribed. To avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for explosive or firearm discharge, use, or possession is not applied in respect to such underlying offense.

USSG § 2K2.4 comment (n.2), (backg'd). We will address each enhancement in turn.

### 1. Enhancement of an 18 U.S.C. § 924(c) Sentence for Use of Firearm in Another Felony Pursuant to § 2K2.1(b)(5)

■ Smith contends that our decision in *Vincent* prohibits the application of the specific offense characteristics for use of a firearm in connection with another felony. Vincent was convicted of: (1) possession with intent to distribute marijuana; (2) using and carrying firearms during and in relation to a drug trafficking crime (the

---

**2.** The wounded officer lived, but required two       months leave.

§ 924(c) offense); and (3) possessing a semi-automatic pistol while being an unlawful user of a controlled substance. *See id.* at 232. The marijuana count was clearly the underlying "drug trafficking crime" for Vincent's § 924(c) conviction. Vincent challenged the district court's use of a specific offense characteristic for the number of firearms and the use of a firearm in connection with another felony offense, *see* USSG § 2K2.1(b)(1), (5), to increase his offense level for count three, a § 922(g) conviction. He argued, and this Court agreed, that the § 922(g) conviction was an "underlying offense" of the § 924(c) conviction, as that term is used in the commentary to § 2K2.4, and thus, the district court engaged in double counting. In so holding, we stated:

> The Guidelines do not define the term "underlying offense." However, both the background note and an application note to U.S.S.G. § 2K2.4 provide no restrictions on what types of offenses constitute "underlying offenses." Rather, those notes simply provide that a sentencing court may not apply specific offense characteristics with respect "to such underlying offense," U.S.S.G. § 2K2.4, comment. (backg'd) (emphasis added), or with respect "to the guideline for the underlying offense," U.S.S.G.

§ 2K2.4, comment. (n. 2) (emphasis added). Given this language, we are unwilling to read "underlying offense" narrowly. Accordingly, because we conclude that defendant's count 3 conviction was an underlying offense to defendant's unlawful use or carrying of a firearm during and in relation to a drug trafficking offense, section 2K2.4 requires that in order to avoid double counting, the district court is prohibited from applying any specific offense characteristic for firearm discharge, use, or possession with respect to defendant's sentence under count 3.

*Id.* at 241.

Several other cases in this Circuit are consistent with the *Vincent* opinion, but do little to help us resolve the issue before us.[3] For example, in *United States v. Smith*, 981 F.2d 887 (6th Cir.1992), the defendant was convicted of assaulting a Postmaster and robbing a Post Office, as well as using a weapon during a crime of violence in violation of § 924(c). We reversed the application of a specific offense characteristic for an express threat of death, listed in § 2B3.1(b)(2)(D), because such an enhancement was prohibited by the § 2K2.4 commentary. There was only one possible "underlying conviction"—the

---

**3.** The government contends that *United States v. Hudson*, 53 F.3d 744 (6th Cir.1995), is relevant to this appeal. We disagree. In *Hudson*, the defendant was convicted of armed carjacking in violation of 18 U.S.C. § 219, use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See id.* at 745. In sentencing the defendant under the Robbery guideline (§ 2B3.1) for the carjacking count, the district court applied the specific offense characteristic for brandishing a firearm, § 2B3.1(b)(2)(C). Rather than arguing that the commentary to § 2K2.4 prohibited this practice, the defendant argued that it was plain error for the district court to enhance a carjacking sentence for brandishing a firearm when an element of the carjacking offense was possession of a firearm. *See id.* at 749. This Court held that this was not error because "brandishing" the weapon was an "additional, separate, and more dangerous

act of pointing that firearm at his victim." *Id.*

Because the defendant did not argue that § 2K2.4 prohibited the use of the specific offense characteristic, this Court had no occasion to address the issue. Specifically, the panel noted that "the holding of the trial court is affirmed on the limited ground" that the defendant presented. *Id.* Had the defendant made the argument based on § 2K2.4, it is clear that under § 2K2.4 the use of the specific offense characteristic was error. The commentary to § 2K2.4 specifically lists the robbery guideline (§ 2B3.1) and its specific offense characteristics, including the one for brandishing a weapon, as examples of specific offense characteristics that should not be applied in conjunction with a conviction under 18 U.S.C. § 924(c). *See* USSG § 2K2.4 comment. (n.2). Therefore, the panel's analysis with regard to the argument that the defendant *did make* is not relevant to this appeal.

robbery—in *Smith,* however, and thus it does not aid us in understanding the scope of *Vincent's* holding.[4]

At least one court has disagreed with *Vincent,* finding instead that the commentary in § 2K2.1 referring to the "underlying conviction" applies only to the crime of violence or drug trafficking crime which formed the basis for the defendant's § 924(c) conviction. *See, e.g., United States v. Flennory,* 145 F.3d 1264, 1268–69 (11th Cir.1998) (rejecting *Vincent*); *United States v. Paredes,* 139 F.3d 840, 846 (11th Cir.1998) (same).

Although *Vincent* did not flesh out its reasoning in detail, we are bound by its holding to conclude that the district court erred in applying specific offense characteristics relating to defendant's possession and/or use of a weapon under § 2K2.1(b)(5) to enhance Smith's sentence for his § 924(c) offense. In order to clarify the scope of our decision today and provide guidance for district courts facing similar circumstances in the future, however, we think a brief elucidation of our reading of the *Vincent* rule may be helpful.

This Circuit has consistently been loathe to condone duplicative punishments for the same behavior when not required to do so. We begin with the public policy against double counting expressed in *United States v. Romano,* 970 F.2d 164, 167 (6th Cir.1992). There, the district court enhanced the defendant's sentence both for being an organizer or manager of a criminal activity under USSG § 3B1.1(a), and for engaging in more than minimal planning under § 2F1.1(b)(2). *See id.* at 166. In vacating Romano's sentence, we explained that

> imposing a rule against double counting is consistent with Supreme Court decisions that have required a clear expression of legislative intent to apply

sentence enhancement provisions cumulatively. *Id.* (citing *Busic v. United States,* 446 U.S. 398, 403–04, 100 S.Ct. 1747, 1751–52, 64 L.Ed.2d 381 (1980); and *Simpson v. United States,* 435 U.S. 6, 12–13, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978)). A rule against double counting is also consistent with the general rule of lenity in criminal cases.

.  .  .  .  .

> Applying these principles to the present case, we find that if certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for that same conduct again under a separate provision whether or not the Guidelines expressly prohibit taking the same conduct into consideration under two separate provisions.

*Id.* at 167; *see also United States v. Chichy,* 1 F.3d 1501, 1505–07 (6th Cir. 1993) (following *Romano*).

Although the specific holding of *Romano* has been superseded by statute, this Circuit retains its dim view of double counting. In *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996), we acknowledged that a 1993 amendment to the Guidelines expressly abrogated the holdings of *Romano* and *Chichy,* and provided a general rule of construction that "[a]bsent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively." *Id.* Both because § 2K2.4 is located in the same section as the sentence enhancement for firearm use or possession, and because Application Note 2 contains just such an instruction to the contrary, that amendment is inapplicable to the issue presented here and in *Vincent,* namely, whether a firearm possession conviction under 18 U.S.C.

---

4. Two unpublished opinions also have facts similar to *Smith, i.e.,* the only other count was the "crime of violence" or the "drug trafficking crime" pursuant to which the defendants were convicted under 18 U.S.C. § 924(c).

*See United States v. Parks,* No. 97–3424, 1998 WL 384562 (6th Cir.1992); *United States v. Harton,* No. 93–5306, 1995 WL 15107 (6th Cir. Jan.13, 1995). Thus, neither helps in understanding *Vincent.*

§ 922(g) is an "underlying offense" of a § 924(c) conviction.

The application of the principle underlying *Romano* and *Vincent* to the circumstances at hand was perhaps best explained in *United States v. Earvin,* 29 F.Supp.2d 962 (E.D.Wis.1998). The defendant in *Earvin* was convicted of three counts: (1) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); and use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). *See id.* at 962. The district court considered whether it should apply a § 2K2.1(b)(5) enhancement for use of the weapon in connection with another felony offense to the defendant's base offense level for the § 922(g) conviction. *See id.* at 963.

The *Earvin* court came to the inescapable conclusion that applying such an enhancement "to a felon in possession count—in which gun possession is an integral element of the offense—will always produce the illogical result of double counting the identical nexus of harmful conduct involving the gun and the 'underlying offense.' [ ... ] Simply put, the 4–point enhancement is premised on the same conduct as the mandatory five-year sentence under § 924(c)(1)." *Id.* at 965. This, the court held, was a "compelling basis" for the implication that the Guidelines consider double counting in this context impermissible. See *id.* at 965. We agree with that reasoning and we agree as well that

> [t]he Guidelines appear otherwise structured to avoid precisely this outcome. *See, e.g.,* USSG Ch. 3, Pt. D, intro. comment ("In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, ... [c]onvictions on multiple counts do not result in a sentence enhancement unless

they represent additional conduct that is not otherwise accounted for ...").

*Id.*

We think that *Earvin's* reasoning, even though that court did not address the issue of whether "underlying offense" included the § 922(g) conviction, also explains our *Vincent* decision. We therefore reject the reasoning of the Eleventh Circuit in *United States v. Flennory,* 145 F.3d 1264, 1267–69 (1998), and *United States v. Paredes,* 139 F.3d 840, 845–46 (1998). It is worth noting, however, as *Earvin* did, that our holding is not inconsistent with that of *United States v. Mrazek,* 998 F.2d 453 (7th Cir.1993). The *Mrazek* defendant faced three counts of armed robbery and only one conviction under § 924(c). The Court applied Application Note 2 to § 2K2.4 to prohibit a 5–point enhancement under § 2B3.1(b)(2)(C) for displaying a firearm to one armed robbery count, but not the other two. *See id.* at 455. As the Court explained, "Nothing has been counted twice. [ ... ] Mrazek received a colossal benefit when the prosecutor brought only one charge under § 924(c). The Guidelines do not require the court to treat the other two robberies as if they had been unarmed." *Id.* Also, despite *Earvin's* statement to the contrary, our decision today is consistent with *United States v. Sanders,* 982 F.2d 4 (1st Cir.1992). The enhancement in that case would not have violated Application Note 2 to § 2K2.4, even if the possession count were considered an "underlying offense" of the § 924(c) conviction, because the enhancement was based on the armed career criminal provision of § 4B1.4 and not on a specific offense characteristic. *See id.* at 7; *see also Vincent,* 20 F.3d at 241 (distinguishing *Sanders*).

**2. Enhancement of an 18 U.S.C. § 924(c) Sentence for an Obliterated Serial Number Pursuant to § 2K2.1(b)(4)**

This argument is one of first impression in this Circuit. We find that the

district court's use of this specific offense characteristic was *not* double counting. The fact that a gun is stolen or has an altered or obliterated serial number is entirely separate and distinct from the defendant's mere use or possession of the gun. Additionally, the examples cross-referenced in § 2K2.4's commentary— § 2B3.1(b)(2)(A)-(F)—involve "possession, use or discharge" of a firearm and do not reach the condition of the firearm's serial number:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

USSG § 2B3.1(b)(2). These six factors are the same type of conduct punished under § 924(c), and are thus inappropriate grounds for enhancement. The condition of the serial number of the gun used to violate § 924(c), however, is immaterial to the § 924(c) violation itself. We therefore hold that the district court did not engage in double counting by applying § 2K2.1(b)(4).

**B. Victim–Related Enhancement Pursuant to § 3A1.2 of an 18 U.S.C. § 111 Conviction for Assaulting a Federal Officer**

■ We find that Smith's characterization of this enhancement as double counting lacks merit. The victim-related adjustment states:

> If—[ ... ] (b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, *knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer,* assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 3 levels.

USSG § 3A1.2(b) (emphasis added). The statute of conviction, 18 U.S.C. § 111, states:

> (a) In general.—Whoever—
>
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties ...
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.
>
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

As Smith admits, other circuits facing this question have not found double counting. *See, e.g., United States v. Park,* 988 F.2d 107, 110 (11th Cir.1993) (per curiam); *United States v. Kings,* 981 F.2d 790, 793 (5th Cir.1993) (per curiam); *United States v. Padilla,* 961 F.2d 322, 327 (2d Cir.1992). These decisions have been based on two distinct rationales. In *Kings,* the Fifth Circuit noted that the aggravated assault guideline, § 2A2.2, does not take into account the federal status of the victim:

> In [*United States v. Kleinebreil,* 966 F.2d 945, 955 (5th Cir.1992) ], we recognized that, although Guidelines section 2A2.4 ("Obstructing or Impeding Officers") incorporates the official status of the victim, section 2A2.4 also contains a cross-reference to section 2A2.2 (simply "Aggravated Assault") for situations in which the defendant is convicted under 18 U.S.C. § 111. Spe-

cifically, section 2A2.4 provides that, "[i]f the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4(c)(1). Moreover, the Application Notes accompanying section 2A2.4 state that the official victim assessment under Guidelines section 3A1.2 should only be applied when this cross-reference in section 2A2.4 ("Obstructing or Impeding Officers") requires that the offense level be determined under section 2A2.2 ("Aggravated Assault"). *See* U.S.S.G. § 2A2.4, comment. (n.1). [ ... ] Similarly, we now conclude that the district court properly increased Kings' group offense level for assaulting a government official.

*Kings,* 981 F.2d at 793.

The Second and Eleventh Circuits, however, have premised their decisions on the fact that § 3A1.2 requires an additional element not required by 18 U.S.C. § 111, *i.e.,* that the defendant knew or had reason to know that the victim was a law enforcement officer. *See Park,* 988 F.2d at 110; *Padilla,* 961 F.2d at 327. Specifically, the Eleventh Circuit reasoned:

> The enhancement under U.S.S.G. § 3A1.2 allows the court to consider the degree of culpability and to prescribe a greater punishment in certain instances than U.S.S.G. § 2A2.2 alone prescribes for a violation of 18 U.S.C. § 111. Specifically, 18 U.S.C. § 111 does not require the Government to prove that the defendant knew that the victim was an officer. *United States v. Alvarez,* 755 F.2d 830, 842 (11th Cir.1985). In contrast, the sentencing guideline enhance-

ment for official status of the victim provides: [quoting USSG § 3A1.2]

Thus, enhancement under the guideline requires the additional showing that the defendant know that the victim is an official. The guideline enhancement for official status contemplates that additional punishment is appropriate if the defendant is aware of the official status of the victim. *See United States v. Padilla,* 961 F.2d 322, 327 (2d Cir.) (recognizing this distinction between the elements of the crime under 18 U.S.C. § 111 and the requirements of U.S.S.G. § 3A1.2 for enhancement for official victim), cert. denied, 506 U.S. 846, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992).

We, therefore, hold that when a defendant has been convicted of assaulting an I.R.S. agent in violation of 18 U.S.C. § 111 and assigned a base offense level for aggravated assault, according to U.S.S.G. § 2A2.2, a sentencing court's enhancement for the victim's official status, under U.S.S.G. § 3A1.2, does not constitute improper double counting.

*Park,* 988 F.2d at 110.

Adopting the rationales of both the Fifth and Eleventh Circuits, we find that the enhancement of Smith's sentence via § 3A1.2 for assaulting a federal officer under 18 U.S.C. § 111 was not double counting.

## C. Upward Departure From a Sentence Under § 2K2.1 Based on Grounds Considered on Cross–Reference to § 2A2.2

In his third assignment of error, Smith contends that the three grounds for departure considered by the district court— § 5K2.2[5] (causing serious injury),

---

**5.** The guideline permitting an upward departure for serious bodily injury states:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly

risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in § 5K2.1.

§ 5K2.6[6] (discharge of a firearm), and § 5K2.9[7] (commission of felony to conceal a second felony)—were previously considered under § 2K2.1(c) through a cross-reference to § 2A2.2, the aggravated assault guideline, and were thus double counting.

The § 2K2.1(c) cross-reference allows a district court to consider what the defendant's sentence would have been for crimes other than the firearm possession, and use the higher of the two offense levels to compute the sentence. Here the court considered the aggravated assault guideline, which contains specific offense characteristics for serious bodily injury and discharge of a firearm, but was required to apply § 2K2.1 because it still provided a higher offense level.

▪ As an initial matter, we find that the § 5K2.9 departure was not double counting because § 2A2.2 does not take into account the commission of an assault to conceal another offense. We will therefore consider Smith's argument only as it relates to the departures based on discharging a firearm and serious injury to the victim.

▪ Smith cites two decisions from other circuits in support of his position. In *United States v. George*, 56 F.3d 1078 (9th Cir.1995), the Ninth Circuit interpreted § 4B1.4, the guideline for the Armed Career Criminal Act (18 U.S.C. § 924(e)), and found that the district court engaged in double counting when one section cross-referenced another guideline which included the characteristics on which the district court departed upward. § 4B1.4 states in pertinent part:

> (b) The offense level for an armed career criminal is the greatest of:
>
> (1) the offense level applicable from Chapters Two and Three; or
>
> (2) the offense level from § 4B1.1 (Career Offender) if applicable; or
>
> (3) (A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(a), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)*; or
>
> (B) 33, otherwise.*
>
> * If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

The district court concluded that the default offense level of 33 in § 4B1.4 was higher than the applicable offense level "from Chapters Two and Three," 30, which included an adjustment for perjury and escape under USSG § 3C1.1. *Id.* at 1087. However, the district court then went on to adjust upward from the offense level of 33 on the basis of the defendant's perjury and escape. *See id.* at 1086. In reversing, the Ninth Circuit reasoned that both the perjury and escape were taken into account by the cross-reference to § 3C1.1,

---

USSG § 5K2.2. The district court departed upward one offense level based on this guideline.

**6.** The guideline permitting an upward departure based on brandishing a firearm states: If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

USSG § 5K2.6. The district court departed upward two levels on this basis.

**7.** The guideline permitting an upward departure based on committing a felony to conceal another felony states:

> If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct.

USSG § 5K2.9. The district court departed upward two levels on this basis.

even though that guideline was not actually applied. *See id.* at 1087. The court refused to allow a § 4B1.4 enhancement unless the perjury and escape were "substantially in excess" of that normally involved in such conduct. *See id.*

In *United States v. Almaguer,* 146 F.3d 474 (7th Cir.1998), the district court was faced with a choice under the guidelines similar to the case at bar. The defendant, a convicted felon, pointed a gun at his young stepson and threatened to shoot him. *See id.* at 475. Almageur pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and the court sentenced him under USSG § 2K2.1. *See id.* at 476. The base offense level was 20. *See id.* The district court cross-referenced § 2A2.2 as instructed by § 2K2.1(c). The § 2A2.2 base offense level was 15, and would have been increased by 3 levels for brandishing a firearm, but was still lower than the § 2K2.1 level. The district court then enhanced the sentence by 3 levels for brandishing and threatening to shoot. *See id.* at 474. The Seventh Circuit reversed, however, on the grounds that his "conduct [in brandishing the weapon] has been fully taken into account by § 2K1.1(c)'s incorporation of the Guideline for aggravated assault." *Id.* at 477.

We decline to accept the reasoning of these two circuits, because we think the Sentencing Commission could not have intended the practical effect of their rulings. Had Smith not brandished the firearm and not caused serious injury to the officer, he still would have been sentenced under § 2K2.1 at the same base offense level, because it would have been higher than the offense level for aggravated assault. Although those characteristics were considered in the cross-referenced section, they never impacted the offense level of the guideline section ultimately used by the district court. Smith's actions in brandishing the firearm and in seriously injuring the officer were never "counted" for purposes of his offense level under § 2K2.1, and therefore, to enhance based on those factors could not be "double" counting. As the district court reasoned:

The Court disagrees with the probation officer's assessment that because other guidelines that might possibly have been used were considered and some of those guidelines that were rejected took into account factors that are not taken into account in the guideline that was ultimately selected, that the Court would be precluded from departing upward based on those factors that other guidelines might have taken into account. [ ... ]

And I would point out further that while in this case the guidelines that were examined by the probation officer are ones that might well have been used because they are—they fit fairly well the conduct that occurred, it would be entirely possible if the argument that the probation officer makes were [sic] carried to the next extreme to be looking at the whole world of available guidelines, many of which would be quite inappropriate because of not really addressing the conduct at issue.

And to say, well, here's a guideline that takes this into account, therefore there could not be an upward departure on that basis, that it would be very hard to draw that line and very hard to make decisions about when upward departures would be appropriate. And I don't think that is what the sentencing commission contemplated. I think the Court should look at the factors that are taken into account by the guideline that has been determined to be applicable, the particular guideline that applied in the case under consideration.

In considering an upward departure the Court finds that an upward departure is appropriate on each of the bases suggested by the government with respect to—the Court finds that this case is sufficiently atypical to take it outside the heartland of cases that are normally covered by this guideline. The Court

agrees with the argument that [the government] made to the effect that if the Court does not depart upward, the conduct which would be far less egregious than the conduct here would be treated for sentencing purposes in exactly the same way.

We hold that the district court did not err in applying §§ 5K2.2, 5K2.6, and 5K2.9.

### III. Conclusion

For the foregoing reasons, we **VACATE** Smith's sentence and remand to the district court with instructions to resentence Smith without applying the specific offense characteristic listed in USSG § 2K2.1(b)(5). We **AFFIRM** the sentence in all other respects.